**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

**ROBERTO MARLEY,**

    **Plaintiff,**

v.

**KAISER FOUNDATION HEALTH PLAN
OF THE MID-ATLANTIC STATES, INC.,**

    **Defendant.**

Case No.: GJH-17-1902

**MEMORANDUM OPINION**

Plaintiff Roberto Marley filed this action against his former employer, Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), bringing claims of gender-based hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.*, retaliation under the Family Medical Leave Act, 28 U.S.C. § 2601 *et seq.*, and wrongful termination. Presently pending before the Court are Defendant's Motion to Dismiss, ECF No. 19, and Plaintiff's Motion for Leave to File a Third Amended Complaint, ECF No. 23. Both motions have been briefed, and a hearing was held on February 2, 2018. For the following reasons, Defendant's Motion is granted, in part, and Plaintiff's Motion is denied.

**I.   BACKGROUND**

    **A.   Factual Background[1]**

Plaintiff began working for Kaiser in May of 2011 and regularly received awards and positive performance reviews through July of 2014. ECF No. 23-1 ¶¶ 6–7. In August of 2014,

---

[1] Unless otherwise noted, the facts are taken from the proposed Third Amended Complaint, ECF No. 23-1, and assumed to be true.

1

Plaintiff accepted a benefits position at Kaiser and was supervised by Tony Richardson. *Id.* ¶ 8. Plaintiff alleges that between September and November of 2014, Richardson engaged in a pattern of harassment based on Plaintiff's national origin and gender. The most egregious allegations are as follows: Richardson told Plaintiff that he was inferior because he was "a foreigner," *id.* ¶ 9; Richardson told Plaintiff that he knew he was gay by "instinct" and that Richardson did not have the "Macho factor," *id.* ¶ 10-11; Richardson slapped his hand on Plaintiff's buttocks, *id.* ¶ 12; Richardson told Plaintiff that he loved it when Plaintiff wore "tight pants," *id.* ¶ 14; Richardson told Plaintiff that he was "too soft" and needed to "man up," *id.* ¶ 15; Richardson physically assaulted Plaintiff by pushing him in the chest, *id.* ¶ 16; Richardson told Plaintiff, after Plaintiff requested to take a lunch break, that "[Plaintiff] is not a woman that is pregnant which only a woman that is pregnant . . . needs a break and lunch often. You need to take it as a man." *Id.* ¶ 17.

After Plaintiff informed Richardson that he found his conduct to be "offensive and harassive" and said he would go to the Vice President, Richardson placed Plaintiff on a Performance Improvement Plan in November of 2014, *id.* ¶ 19, and threatened to terminate Plaintiff after Plaintiff complained about Richardson's conduct to Kaiser's internal "EEO office" in December of 2014. *Id.* ¶ 22. After his complaint, he applied for a promotion and was told he would not be hired for the position because he had a "big mouth." *Id*. ¶ 24. He was also told not to apply and that he would not get the position because he was on a 30 day Performance Improvement Plan and that he would not be transferred or promoted for any other position during his tenure with Kaiser. *Id*. ¶ 24. Thereafter, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and completed an EEOC intake questionnaire on December 22, 2014, alleging race and national origin discrimination by Richardson. *Id.* ¶ 25; ECF No. 18-1

at 5–11.[2] In the intake questionnaire, Plaintiff stated that Richardson reprimanded him by issuing a "30 days warning letter" on December 19, 2014, which Plaintiff alleged was based on Richardson labeling him as "being a foreigner." *Id.* at 6. Plaintiff further alleged that Richardson was treating him less favorably than three female workers on his team. *Id.* Plaintiff also supplemented his intake questionnaire with a three-page letter describing specific examples of Richardson mistreating Plaintiff. While Plaintiff alleged that Richardson favored three female employees over him, the acts of harassment, discrimination, and retaliation underlying the statements in the letter are based on Richardson's alleged animus towards Plaintiff based on his national origin. *See id.* at 9–11.

In addition to Plaintiff's EEOC intake questionnaire, a Charge of Discrimination ("Charge") was drafted against Kaiser. The Charge alleged Title VII discrimination based on Sex, National Origin, and Retaliation from events occurring in September of 2014 through January of 2015. ECF No. 18-1 at 1–4. Specifically, the Charge alleged that Richardson harassed Plaintiff because of his national origin, told him he was "too soft" and needed to "man up," placed Plaintiff on a 30-day performance improvement plan after Plaintiff told Richardson that he was not comfortable with his conduct, and threated to fire Plaintiff after he filed a complaint

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

of national origin discrimination within Kaiser. *Id.* at 2. Plaintiff signed the Charge on April 24, 2015. *Id.*[3]

In March of 2015, Plaintiff informed Sheila Blackman, Richardson's supervisor, that Richardson had manipulated Plaintiff's timecard and intentionally provided false dates of absence in retaliation for Plaintiff's EEO complaint. ECF 23-1 ¶ 29. In May of 2015, Plaintiff again complained to Blackman that Kaiser continued to fail to investigate Richardson's allegedly discriminatory conduct. *Id.* ¶ 31. Thereafter, on August 7, 2015, Plaintiff alleges that Blackman stated that Human Resources had completed its EEO investigation, heard a rumor that Plaintiff was going to sue Kaiser, and stated that she was going to "keep track" of Plaintiff's performance. *Id.* ¶ 32.

Unrelated to Richardson's conduct, Plaintiff suffered a head injury on August 10, 2015, resulting in neurological symptoms that required "intense cognitive therapy," for which Plaintiff needed to be out of work for at least three months. *Id.* ¶¶ 33. Plaintiff alleges that his supervisor discouraged him from seeking workers compensation benefits, telling Plaintiff that he "should not have involved an attorney" and that "they could have taken care of it ourselves." *Id.* ¶ 35. As a result of the injury, Plaintiff was in and out of work throughout August 2015 and was issued a certification that he would need treatment for approximately two to three months. *Id.* ¶ 40. That same month he was issued a Performance Improvement Plan, and written warning. *Id.* ¶¶ 37-40.

---

[3] Plaintiff states that his EEOC complaint was subsequently transferred to the Montgomery County Maryland Office of Human Rights and he currently has a pending request under the Freedom of Information Act to retrieve all documents related to his December 2014 charge. *See* ECF No. 18 at 4 n.1. In its Motion to Dismiss, Defendant attaches Plaintiff's Complaint of Alleged Discrimination with Montgomery County, filed in November of 2015. The Montgomery County Complaint includes the same allegations found in the EEOC Charge, and further alleges that both Richardson and his supervisor, Sheila Blackman, retaliated against Plaintiff for filing an EEOC Charge by placing him on a performance improvement plan on August 17, 2015. *See* ECF No. 19-3. While Plaintiff does not acknowledge this document in any of his subsequent filings or explain why he filed the Montgomery County Complaint, the Court will construe the additional allegations in the Montgomery County Complaint as an amendment to Plaintiff's initial EEOC charge. *See* ECF No. 19-2 at 9 n.4; *see also Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity").

In September and October, Plaintiff commenced his FMLA leave after obtaining certification from his health care provider and was on a reduced 32-hour per week work schedule as he sought medical treatment. *Id.* ¶ 42. Thereafter, Plaintiff received a second written warning on October 16th, a final written warning on November 2nd, and was ultimately terminated on November 16, 2015. *Id*. ¶¶ 44-46.

### B. Procedural Background

Plaintiff filed his initial Complaint *pro se* on May 2, 2017 in the Circuit Court for Montgomery County and subsequently filed an Amended Complaint on June 29, 2017 after retaining counsel. ECF No. 2. On July 12, 2017, Defendant removed the action to this Court, ECF No. 1, and filed its First Motion to Dismiss on July 19, 2017. ECF No. 6. Thereafter, on October 10, 2017, the Court granted Plaintiff's motion for leave to file a Second Amended Complaint, ECF No. 11, and denied Defendant's First Motion to Dismiss as moot. *See* ECF No. 17. After Defendant filed its Second Motion to Dismiss on October 24, 2017, ECF No. 19, and each party filed its respective Response and Reply briefs, ECF Nos. 20 and 22, Plaintiff filed another motion for leave to amend his complaint on January 11, 2018. *See* ECF No. 23; ECF No. 23-1 (Third Amended Complaint). The parties addressed both motions during the Court's February 2, 2018 motions hearing.

## II. STANDARD OF REVIEW

Plaintiff moves for leave to file a Third Amended Complaint. ECF No. 23. Pursuant to Federal Rule of Civil Procedure 15(a)(2), plaintiffs may amend their complaint with the court's leave, and "[t]he court should freely give leave when justice so requires." "[T]he general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, unless the amendment would be prejudicial to the opposing party, there has been bad faith

on the part of the moving party, or the amendment would have been futile." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). Defendant's primary argument here is that the Third Amended Complaint is futile.[4] "[T]he Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss." *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 244 (D.D.C. 2007) (citing *James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.")). Thus, in determining the futility of Plaintiff's Third Amended Complaint, the Court will discuss whether the claims would survive a Motion to Dismiss.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of Plaintiff's claims, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). However, the

---

[4] Defendant also claims they were prejudiced, but beyond a slight delay, the Court sees no prejudice in Plaintiff's multiple amended complaints at this relatively early stage in the litigation.

complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Naked assertion, devoid of further factual enhancement" is also insufficient to survive a motion to dismiss. *Id*.

### III. DISCUSSION

Plaintiff seeks to assert the following claims in his Third Amended Complaint: Wrongful Termination; Hostile Work Environment under Title VII; Retaliation under the FMLA; and Retaliation under Title VII.[5] Each claim is addressed in turn in order to determine if it would survive a Motion to Dismiss. Where appropriate, the Court will consider the arguments made in the briefing on the Defendant's Motion to Dismiss the Second Amended Complaint.

#### A. Wrongful Termination

Plaintiff alleges that he was discharged because he filed for workers compensation benefits in violation of Maryland public policy. Specifically, Plaintiff alleges that he sought worker's compensation benefits in August of 2015 after sustaining a head injury and that his supervisor made comments discouraging him from doing so, he began receiving warnings and was ultimately terminated. *See* ECF No. 23-1 ¶ 35-46. To establish the tort of wrongful termination, "the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002); *see also Ewing v. Koppers Co.*, 537 A.2d 1173, 1175 (Md. 1988).

---

[5] At the Motion Hearing, there was confusion as to which claims were still being pursued by the Plaintiff and which had been conceded. The Court will consider all claims alleged in the proposed Third Amended Complaint. Any claims alleged in prior complaints but not appearing in the most recent iteration will be considered dismissed.

"Discharging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." *Id.*

In its Motion to Dismiss the Second Amended Complaint, Defendant argues that Plaintiff has not pleaded facts establishing a sufficient nexus, or causation, between seeking worker's compensation and Plaintiff's ultimate termination. *See* ECF No. 19-2 at 20 ("the Second Amended Complaint does not plead facts from which this Court could reasonably infer that Ms. Blackman discharged Mr. Marley solely because he filed a claim for worker's compensation").[6] "Plaintiffs may state a prima facie case of causation by relying on evidence other than, **or in addition to,** temporal proximity where such evidence is probative of causation." *Westmoreland v. Prince George's County, Md.,* 876 F. Supp. 2d 594, 607–08 (D. Md. 2012) (citing *Jenkins v. Gaylord Entertainment Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (emphasis in *Westmoreland*)). Here, the Court considers both Blackman's statements that Plaintiff "should not have involved an attorney" and that they "could have taken care of it ourselves," as well as the multiple warnings of termination in August and October of 2015 ahead of Plaintiff's ultimate discharge that November. Neither the timing of Plaintiff's ultimate termination, nor Blackman's alleged statements discouraging a worker's compensation claim, alone, are likely sufficient to establish causation. *See Pollard v. High's of Baltimore*, Inc., 281 F.3d 462, 473 n.7 (4th Cir. 2002) (noting that off-hand negative comments regarding an employee's attempts to utilize workers compensation does not establish the requisite retaliatory animus); *Westmoreland*, 876 F. Supp. 2d at 613 (noting that a three month proximity "in and of itself, is likely insufficient to

---

[6] While Defendant relies heavily on the fact that Plaintiff has not pleaded that his discharge was *solely* due to utilizing worker's compensation because he also asserts the termination was in retaliation for his use of FMLA leave, the assertion of multiple wrongful reasons for termination does not cause Plaintiff's causation argument to fail. *Ford v. Rigidply Rafters, Inc.,* 999 F. Supp. 647, 650 (D. Md. 1988) (rejecting argument that employer could avoid liability because Plaintiff had alleged termination was in violation of both Title VII and the Maryland Workers' Compensation Act).

satisfy the causation element of the prima facie [retaliation] case."). However, when considering the combined effect of Blackman's statements, Plaintiff's multiple termination warnings, and Plaintiff's ultimate discharge, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that it has been plausibly alleged that Plaintiff's discharge was causally related to his filing for worker's compensation. *See Westmoreland*, 876 F. Supp. 2d at 613–14 (holding that an employer's transfer of an employee three months after the employee undertook a protected activity, when combined with other evidence probative of a retaliatory animus, was sufficient to establish causation). Therefore, the Court will not dismiss Plaintiff's wrongful termination claim.

### B. Title VII Hostile Work Environment

Plaintiff alleges that Richardson harassed him based on his gender, creating a hostile work environment prohibited under Title VII. However, before the Court may consider whether Plaintiff has pleaded sufficient factual allegations supporting his hostile work environment claim, the Court must determine whether Plaintiff exhausted his administrative remedies. *See Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012) (Title VII requires a plaintiff to "exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court"); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction). While Plaintiff's Title VII claims have evolved over the course of this matter, the current iteration of Plaintiff's gender-based hostile work environment claim is not supported by his underlying EEOC Charge. *See id.* at 300 ("The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents."). Although, Plaintiff argues that he has exhausted his administrative remedies because his Title VII claims are "reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation," ECF No.

20 at 6 (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000), the allegations set forth in the Charge are markedly different from the gender-based hostile work environment allegations set forth in Plaintiff's Complaint.

The EEOC Charge only contains one sentence related to gender: "Mr. Richardson also told me that I am 'too soft' and that I need to 'man up,' and advised me that he would take his anger out on me because he cannot act in a hostile manner toward the Female employees." *See* ECF No. 18-1 at 2. This alone is insufficient to put Kaiser on notice that its work environment is sufficiently abusive and "permeated with discriminatory intimidation, ridicule, and insult" to warrant protection under Title VII. *See Houston v. Kirkland*, No. GJH-15-2507, 2016 WL 7176580, at *7 (D. Md. Dec. 7, 2016) (citing *Byington v. NBRS Financial Bank*, 903 F. Supp. 2d 342, 351 (D. Md. 2012)). Plaintiff appears to argue that because he checked the "Sex" box on the EEOC Charge form itself, he has exhausted any and all sex or gender-based hostile work environment or discrimination claims that he can bring against his supervisors. But such a loose application of Title VII's exhaustion requirements would obviate the underlying policy of ensuring that first the employer, and then the EEOC, can address and rectify Title VII allegations before federal litigation ensues. *See Sydnor*, 681 F.3d at 593 (citing *Chris v. Tenet,* 221 F.3d 648, 653 (4th Cir. 2000) (Allowing the EEOC "the first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'").

Additionally, the allegations in the EEOC Charge are largely focused on national origin discrimination. Placed in context, the "too soft" and "man up" comments suggest that Richardson was harassing Plaintiff because Plaintiff was unable to cope with Richardson's national-origin related abuse, not that Richardson was creating a gender-based hostile work

10

environment.[7] Furthermore, Plaintiff's more serious claims regarding Richardson taking his anger out on Plaintiff instead of other female employees is more in line with a claim of disparate treatment, or discrimination, claims that do not appear in the Third Amended Complaint. The EEOC Charge is silent on Plaintiff's more serious claims herein that Richardson inappropriately touched Plaintiff's buttocks or made numerous lude comments related to Plaintiff's clothing and supposed effeminate behavior. Therefore, the substance of the Charge did not put Kaiser on notice of the allegations made in the Complaint such that Kaiser could investigate and address Richardson's alleged wrongdoing. Therefore, Plaintiff has not exhausted his administrative remedies, and his hostile work environment claim must be dismissed.[8]

### C. FMLA Retaliation

In addition to the Worker's Compensation claim, Plaintiff also alleges that his ultimate termination on November 16, 2015 was in retaliation for his use of FMLA leave.[9] Defendant argues that Plaintiff has failed to establish a causal connection between his FMLA leave and discharge because Defendant had regularly approved Plaintiff's FMLA leave, sometimes in "large chunks of time," at least eleven months before his discharge. *See* ECF No. 19-2 at 17. Defendant relies on *Germanowski v. Harris*, 854 F.3d 68 (1st Cir. 2017) to argue that if an employer has a history of accommodating a plaintiff's FMLA leave requests, a plaintiff's

---

[7] Had Plaintiff continued to pursue a claim of Hostile Work Environment based on national origin, that claim would be dismissed because he has not sufficiently alleged that the conduct was "sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment" based on gender or national origin. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (discussing elements of hostile work environment claim).

[8] The parties dispute whether the Court may look beyond the EEOC Charge and consider Plaintiff's allegations set forth in his EEOC intake questionnaire when determining whether Plaintiff has exhausted his administrative remedies. *See* ECF No. 19-2 at 10–12; ECF No. 20 at 7–9. Plaintiff's intake questionnaire and supplemental letter only include additional allegations that advance Plaintiff's *national origin* hostile work environment claim and, even if considered now, does nothing to bolster his gender-based claim herein. Therefore, the Court need not adjudicate whether the intake questionnaire affects the exhaustion analysis.

[9] A prima facie case of retaliation under the FMLA is identical to that under Title VII, discussed below. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006).

discharge shortly after requesting additional leave is insufficient to establish the requisite causal connection. *See* ECF No. 22 at 9 (citing *Germanowski*, 854 F.3d at 75). However, Defendant's reliance on *Germanowski* is misplaced.

In that case, the First Circuit upheld dismissal of an employee's FMLA retaliation claim despite the fact that the employee's discharge "came fast on the heels" of her request for leave. *Germanowski*, 854 F.3d at 74. There, while the court found that the close temporal proximity between the employee's leave request and discharge did not support a finding of causation, it did not do so based on the employer's history of accommodation. Rather, the court found that the fraught relationship between the employer and employee, established well before the employee requested leave, made clear that her ultimate discharge was not due to her request for leave. *Id.* at 75 ("the allegations relate a history of an emotionally fraught and longstanding dispute between the employer and the employee, an expressed fear by the employer that the employee may have brought a gun to work, and a subsequent lock-out of the employee, all in the context that caused even [the employee] to suspect imminent termination").

Here, the Complaint alleges that Plaintiff's discharge came in close temporal proximity to his request for FMLA leave and, at this juncture, the record does not establish that there was a legitimate, non-discriminatory reason for the discharge. Even though Defendant had previously allowed Plaintiff to take FMLA leave without recourse, it is certainly plausible that, as alleged, Plaintiff's commencement of FMLA leave in October of 2015 exceeded Kaiser's patience and prompted it to discharge Plaintiff. While discovery may show that Plaintiff's ultimate termination was based on a legitimate, non-retaliatory reason, Plaintiff has pleaded facts sufficient to support his FLMA retaliation claim at this time.

**D. Title VII Retaliation**

Finally, Plaintiff alleges that Richardson and Blackman retaliated against him after Plaintiff made informal EEO complaints and ultimately filed an EEOC Charge by threatening to fire him, placing him on a performance improvement plan and failing to promote him.[10] To establish a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate three elements: "(1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action."[11] *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citing 42 U.S.C. SS 2000e-3). Although both require an allegation of adverse employment action, Title VII's protections against discrimination and retaliation are not coterminous. *Smith v. Board of Ed. of Price George's Cnty.*, No. GJH-16-206, 2016 WL 4014563, at *4 (D. Md. July 26, 2016) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). While a plaintiff alleging discrimination must show that he was subject to an adverse employment action that altered the terms or conditions of employment, a plaintiff alleging retaliation need only show that a reasonable employee would find "the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (citation and internal quotation marks omitted); *see also Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 827 (E.D. Va. 2016) ("Under [*Burlington Northern*], effect on terms or conditions of employment can certainly be a factor in the fact-based determination of

---

[10] Plaintiff does not allege that his ultimate termination in November of 2015 was in retaliation for any activity protected under Title VII.

[11] Under the *McDonnell Douglas* framework, if the plaintiff can prove a prima facie case of discrimination through circumstantial evidence, as Marley attempts herein, the defendant must then produce a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). If the defendant discharges this burden of production, the plaintiff must show that the defendant's proffered reason is a pretext for discrimination. *Id.* at 804. At this juncture, Defendant has not proffered a non-discriminatory reason for the adverse employment action.

material adversity, . . . however, effect on terms or conditions of employment is no longer *necessary* to state actionable misconduct in a retaliation claim.") (internal citations and quotation marks omitted) (emphasis in original).

The placement on a Performance Improvement Plan could be considered a reprimand. While reprimands suggestive of an impact to the terms and conditions of employment may be the subject of a retaliation claim, *see Howerton v. Bd. of Educ. of Prince George's Cty.,* No. TDC-14-0242, 2015 WL 4994536, at * 18 (D. Md. Aug 19, 2015), reprimands without collateral consequences do not dissuade a reasonable employee from engaging in protected activity. *Hinton*, 185 F. Supp. 3d at 832. Here, however, Plaintiff additionally alleges that the Performance Improvement Plan prevented him from being considered for a promotion. See ECF No. 23-1 ¶ 24 ("Blackman also told Marley not to apply and that he would not get the position because he was on a 30day Performance Improvement Plan. Blackman told him that he would also not be transferred or promoted for any other position during his tenure with Kaiser."). Thus, although not required for a retaliation claim, through his placement on a Performance Improvement Plan, Plaintiff actually suffered a harm that impacted his terms or conditions of employment and, additionally, suffered a harm that would dissuade a reasonable employee from taking a similar action. Similarly, the threat of termination would plainly dissuade a reasonable worker from filing a similar EEO complaint. Therefore, Plaintiff has alleged that he was subjected to a retaliatory adverse action based on the threat of termination and the Performance Improvement Plan.

As for the denial of the promotion itself, however, while the Court will consider this evidence in support of the allegation that the Performance Improvement Plan was a materially

adverse action, as a stand-alone adverse action, administrative remedies were not exhausted. The Third Amended Complaint references new evidence, which includes an email from Blackman to Plaintiff, and others, on December 29, 2014 alerting them that "HR has posted a position for Senior Benefit Specialist, if interested," and alleges that Plaintiff applied for, but was denied this opportunity. *See* ECF Nos. 23-2; ECF No. 27 ¶¶ 23, 24. Clearly, non-selection for a promotion opportunity is a retaliatory adverse action. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004). However, because Plaintiff failed to include these facts in his EEOC Charge, he has not exhausted his administrative remedies with respect to his non-selection allegation.

Unlike a discrimination claim, a retaliation claim can be alleged for the first time in federal court if it relates to the filing of the EEOC charge or EEO complaint itself. *Jones*, 551 F.3d at 302 ("a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge possibly bringing about further retaliation"); *see also Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (holding that an Army employee could bring a retaliation claim for the first time in federal court when the allegation was that the Army retaliated against her for filing an EEOC charge). However, to the extent that a retaliation action predates a subsequently-filed EEOC Charge, the Court may not consider it absent exhaustion. *See Tonkin v. Shadow Mgmt., Inc.*, 605 F. App'x 194, 194 (4th Cir. 2015) (finding a failure to exhaust a retaliation claim where the plaintiff "had knowledge of the factual basis for her retaliation claim before she filed her charge with the EEOC"); *see also Staley v. Gruenberg*, No. 12-cv-530 (GBL/JFA) 2013 WL 12096490, at *8 (E.D. Va. May 10, 2013), *aff'd* 575 F. App'x 153 (dismissing retaliation claim for failure to exhaust where alleged retaliatory conduct occurred prior to time in which plaintiff could have sought EEOC counseling).

Here, Plaintiff does not allege the retaliatory non-selection for promotion occurred as a result of filing his EEOC Charge. Therefore, he was required to raise this non-selection allegations as a part of his initial April 2015 EEOC Charge.[12] While Plaintiff argues that the non-selection was reasonably related to the allegations in the EEOC Charge because Blackman refused to select him because he was on a performance improvement plan, the non-selection is also being alleged as a distinct event that Plaintiff needed to raise in order to exhaust his administrative remedies. Thus, while administrative remedies were exhausted with regard to the Performance Improvement Plan and that action was connected to the denial of a promotion, the event of the promotion cannot be used as a separate adverse action. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Second Motion to Dismiss, ECF No. 19, shall be granted, in part, and denied, in part, and Plaintiff's Motion for Leave to File a Third Amended Complaint, ECF No. 23, shall be granted, in part and denied, in part. The Hostile Work Environment claim is dismissed. The Title VII retaliation claim is limited to the Performance Improvement Plan and the threat of termination. The claims for FMLA Retaliation and Wrongful Discharge survive. A separate Order follows.

Dated: September 20, 2018 /s/
GEORGE J. HAZEL
United States District Judge

---

[12] Even if Plaintiff filed his initial intake questionnaire prior to the alleged non-selection, the non-selection occurred before the EEOC corresponded with Plaintiff on his claims and Plaintiff agreed to the EEOC-drafted statement of charges. Moreover, the non-selection occurred before, but is not mentioned in, Plaintiff's November 2015 amendment.