IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **ROBERTO MARLEY,** | * | |
| *Plaintiff,* | * | **Case No.: 17-cv-1902-PWG** |
| **v.** | * | |
| **KAISER PERMANENTE FOUNDATION HEALTH PLAN,** | * | |
| | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Roberto Marley, a Maryland resident, has brought this suit against his former employer, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* He has also brought a state law claim for wrongful termination. On November 16, 2015 Kaiser terminated Marley's employment after placing him on performance improvement plans and issuing multiple written warnings. Marley claims that his termination was wrongful and violated public policy because, he alleges, it resulted from his filing a worker's compensation claim. Marley also alleges supervisors at Kaiser retaliated against him when he complained to Kaiser's internal human resources office and the Equal Employment Opportunity Commission ("EEOC") after his direct supervisor, Tony Richardson, mocked Marley's national origin and apparent sexual orientation. As to the FMLA claim, Marley alleges Kaiser retaliated against him because he took medical leave for emotional distress and again after a workplace accident.

1

Pending Kaiser's motion for summary judgement. ECF No. 55. The parties fully briefed the motion (ECF Nos. 55, 60, 63), and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). Because I find that no reasonable juror could find for Marley on any of his claims, Kaiser's motion is GRANTED, and summary judgment will be granted in favor of Kaiser with respect to each count and the clerk of court will be directed to close this case.

**Factual Background**

Marley began working for Kaiser in May of 2011. Third Am. Compl. ("Compl.")[1] ¶ 6, ECF No. 34. He received a series of awards for his performance from May 2012 through July 2014 and was one of the company's top performers. *Id*. ¶ 7. Marley transferred to the role of benefits specialist in August of 2014, received a pay raise, and came under the supervision of Tony Richardson, who was in turn under Sheila Blackman's supervision. *Id*. ¶ 8. The new job soon took a turn for the worse for Marley: shortly after the transfer, Richardson reprimanded Marley for being a foreigner and a non-citizen of the United States. *Id*. ¶ 9. Richardson criticized Marley's language and writing abilities, and taunted him for his apparent sexuality, observing that Marley lacked a supposed "macho factor." *Id*. ¶ 11. Richardson made a series of other disparaging remarks to Marley, including a comment that Richardson "loved it" when Marley wore "tight pants," that Marley was "too soft," and that Marley needed to take his lunch breaks like a man because only pregnant women require lunch breaks. *Id.* ¶¶ 14, 15, 17. Richardson also physically assaulted Marley on multiple occasions, slapping his hand on Marley's buttocks in September of 2014 and pushing Marley in the chest approximately one month later. *Id.* ¶¶ 12, 16.

---

[1] The Third Amended Complaint is the operative complaint and therefore will be cited to as "Compl." I have indicated citations to any earlier versions of the complaint or exhibits to earlier complaints.

Marley took exception to Richardson's conduct and, in November of 2014, confronted Richardson and informed Richardson of his intent to report the harassment and discriminatory conduct. *Id*. ¶ 19. Richardson placed Marley on a Performance Improvement Plan ("PIP") after the confrontation. *Id*. Marley responded by contacting Kaiser's "EEO office" in December; he subsequently applied for a promotion and was rebuffed by Richardson for having "a big mouth." Blackman also told Marley not to apply due to his placement on a PIP. *Id*. ¶ 24. Marley then contacted the EEOC, filing an intake form in December of 2014 in which he alleged Richardson discriminated against him on the basis race and national origin. *Id*. ¶ 25; Ex. 1 to Second Am. Compl. at 3, 6, ECF No. 18-1 (EEOC Intake Questionnaire).

In addition to the EEOC intake questionnaire, a Charge of Discrimination ("Charge") was drafted against Kaiser on Marley's behalf, which alleged Title VII discrimination based on Sex, National Origin, and Retaliation for events spanning September 2014 through January 2015. Ex. 1 to Second Am. Compl. at 2. The allegations in the Charge mirrored those in Marley's EEOC questionnaire. In February of 2015, Richardson informed Marley that he intended to issue another PIP and told Marley that he should resign for (again) opening his big mouth. Compl. ¶ 28. Marley attempted to distance himself from Richardson afterwards. *Id*. In May of 2015, Marley complained about the lack of an investigation into his allegations against Richardson, whose conduct had caused Marley to use paid time off and FMLA time to pursue treatment for the mental stress he claimed he suffered while working at Kaiser. *Id*. ¶¶ 30-31. Marley requested an additional two months of FMLA leave in May, 2015 which, he states, was necessary to recuperate from Richardson's harassment. *Id*. ¶ 31.

The internal investigation of Marley's EEO allegations concluded on August 7, 2015 when Blackman summoned Marley to her office, where she informed him that human resources

3

completed the investigation.  *Id*. ¶ 32.  Blackman also informed Marley that she heard a rumor he planned to sue Kaiser and, later that day, said she would "keep track" of his performance.  *Id*.

On August 10, 2015, Marley suffered a head injury at work; his physicians recommended he take off the next three months and undergo cognitive therapy due to the severity of his injury.  *Id*. ¶¶ 33, 34.  Marley alleges that his supervisor discouraged him from seeking workers compensation benefits, telling him that he "should not have involved an attorney" and that "they could have taken care of it ourselves."  *Id*. ¶ 35.  Marley was in and out of work that month but received another PIP on August 17, 2015 and, two days later, a written warning.  *Id*. ¶ 36–38.

In September and October, Marley began a reduced workload of 32 hours per week; in October, he received certification of a serious health condition from his health care provider and commenced FMLA leave.  *Id*. ¶¶ 42, 43.  On October 16th, Marley received a second written warning; a final warning followed on November 2nd and Marley was fired on November 16, 2015.  *Id*. ¶¶ 44–46.

## Procedural Background

This case has a lengthy procedural history.  It was filed on May 2, 2017 via a *pro se* complaint in Montgomery County Circuit Court.  ECF No. 2.  Marley soon retained counsel, who then amended the complaint on June 29, 2017, ECF No. 4, and Kaiser removed the case to this Court on July 12, 2017, ECF No. 1.  The case was assigned to Judge Hazel and Kaiser immediately filed a motion to dismiss; Marely subsequently filed a second amended complaint and Kaiser re-raised its motion to dismiss.  While Kaiser's motion was pending, Marley moved for leave to file a third amended complaint, which Kaiser opposed.  Judge Hazel held a motions hearing on February 2, 2018 where he considered both Kaiser's motion to dismiss and Marley's motion for leave to file a third amended complaint.  On September 20, 2018, Judge Hazel issued a memorandum opinion in which he granted in part and denied in part both motions.  Mem. Op.

Sept. 20, 2017, ECF No. 32.  As to Kaiser's motion to dismiss, Judge Hazel dismissed Marley's hostile work environment claim, limited the Title VII retaliation claim to the issues of Marley's PIP and his receiving threats of termination, and allowed both the FMLA retaliation and Wrongful Discharge claims to proceed.  *Id.* 16.  Judge Hazel ordered that the Third Amended Complaint, ECF No. 34, would be the operative complaint.

On October 22, 2018, the Clerk's office reassigned the case to me.  Marley again sought to amend, and I denied Marley's motion.  ECF No. 41.  The parties proceeded to discovery and, at the close of discovery, Kaiser noted its intent to file a motion for summary judgment.  ECF No. 52.  I held a pre-motion telephone conference on October 10, 2019 and the parties proceeded to brief the motion.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*

**Discussion**

1) Wrongful Termination

A claim for wrongful termination under Maryland law requires that a plaintiff prove (1) the employer terminated his or her employment, (2) "the basis for the employee's discharge . . . violate[d] some clear mandate of public policy," and (3) there was "a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002); *see Watson v. ADT, LLC*, No. PX-18-48, 2018 WL 3122456, at *2 (D. Md. June 26, 2018) (citing *Wholey*). "Terminations in violation of public policy are narrowly circumscribed and 'limited to situations where the employee has been terminated for exercising a specific legal right or duty or where the employee has been fired for refusing to violate the law or the legal rights of a third party.'" *Watson*, 2018 WL 3122456, at *2 (quoting *Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 309–10 (D. Md. 2002)). Thus, "[t]he plaintiff must 'specifically identify the clear mandate of Maryland public policy that was violated by his termination.'" *Id.* (quoting *Terry v. Legato Sys., Inc*., 241 F. Supp. 2d 566, 569 (D. Md. 2003) (quoting *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002))).

Here, Marley alleges that Kaiser terminated him for two reasons: filing a worker's compensation claim and using FMLA leave, both of which occurred after a workplace injury. The issue I must decide is whether there was a sufficient nexus between Marley's conduct and his termination.

Kaiser argues it is entitled to summary judgment because Marley was not terminated solely due to his filing of a worker's compensation claim. In Kaiser's assessment, the undisputed facts here establish Blackman "genuinely believed that Mr. Marley's performance was poor," and this

belief gave rise to the valid decision to terminate Marley. Def.'s Mot. 30. Kaiser points to negative feedback Blackman received about Marley, documentation of his poor performance in his 2015 PIP, and his testimony that he felt no need to improve his performance. *Id*.; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 137; Ex. 29 to Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-6. On these facts, Kaiser argues, no reasonable juror could make the necessary finding that Marley was terminated solely because be engaged in protected conduct—here, filing a worker's compensation claim. *Id.* 29.

In opposition, Marley argues that summary judgment is not warranted because he can establish the causation element for his wrongful discharge claim. Pl.'s Opp. 16. Marley states that there is a dispute as to "why and when" he received a PIP from Blackman. The discussion between Marley and Blackman preceding that PIP, Marley states, concerned not his work performance but rather his EEOC allegations and the rumor Marley intended to sue Kaiser. *Id*.; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 134. Further, Marley points to Blackman issuing a PIP on October 16, 2015, the first day Marley returned to work. Pl.'s Opp. 18. This, in Marley's view, creates an inference of retaliatory animus between Marley's protected conduct and Kaiser taking adverse action against him.

Marley also attempts to rebut Kaiser's argument that the real reason for terminating him was poor performance. Marley argues "the gaping hole in Kaiser's argument" is that Marley's coworkers—who provided Blackman with negative feedback about him—were not responsible for tracking Marley's performance. Pl.'s Opp. 19. And, according to Marley, neither was Blackman, who was replaced as Marley's supervisor in August 2015. In fact, both the August and October PIPs charged a new supervisor, Janice Murray, with reviewing Marley's performance on a weekly basis. (August 2015 PIP) Ex. 29 to Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-6 at 34; (October

2015 PIP) Ex. 48 to Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-8 at 13.  But, due to Marley's intermittent absence due to his injury, Marley argues the required tracking of his performance could not occur.  Pl.'s Opp. 21.

In reply, Kaiser underscores that the decision to place Marley on a PIP occurred before Marley suffered an injury at work.  The record reflects that Blackman documented Marley's poor performance in a 2015 mid-year review, which she completed by August 4, 2015.  Blackman Dec. ¶ 13, Ex. B to Def.'s Mot., ECF No. 55-9; Aug. 4, 2015 Performance Review, Ex. 7 to Blackman Dec., Ex. B to Def.'s Mot., ECF No. 55-11.  This decision, in Kaiser's view, undercuts any temporal nexus between Marley's injury, the consequences of that injury, and Kaiser's decision to terminate him.  Kaiser further emphasizes that it is the timing of Blackman's decision to place Marley on a PIP that matters, not the timing of that PIP being revealed to Marley.  Def.'s Reply 10.  This decision, which occurred prior to Marley's injury, obviously could not have been motivated by Marley's decision to file a worker's compensation claim.  *Id*. 11.

Kaiser also responds to the argument about which supervisor was responsible for reviewing Marley's performance.  While Kaiser acknowledges Murray had such a responsibility, the PIPs make clear that Blackman shared the responsibility.  *Id*. at 12; Ex. 8 and 11 to Blackman Dec., Ex. B to Def.'s Mot., ECF No. 55-11 at 21, 28.

Regarding the wrongful termination claim, I must decide whether there is evidence in the record to support a finding that Kaiser terminated Marley solely on the basis of filing a worker's compensation claim for his head injury.  In assessing that question, I note that Marley's opposition to Kaiser's motion generates ample heat but minimal light.  Clearly, Marley is aggrieved by his being placed on a PIP and not receiving sufficient notice or what he claims would be a fair opportunity to improve his work product.  But, as to his wrongful termination claim, the legal test

is straightforward: if Marley was discharged solely because he filed a worker's compensation claim, Kaiser must be held liable. At the summary judgment stage, Marley need only produce more than a scintilla of evidence to show that a reasonable jury could find for him on this claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Further, Marley has the benefit of all reasonable inferences being drawn in his favor. *Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016).

Even under this generous framework, Marley cannot defeat Kaiser's motion. Kaiser terminated Marley for poor performance. His supervisors documented his poor performance prior to his injury and accompanying worker's compensation claim, and the record is clear that Marley's performance did not improve. Kaiser is not obligated to keep an under-performing employee on its payroll, and terminating Marley for this reason does not violate public policy. Marley misconstrues the temporal element of a wrongful termination claim, arguing that he was not timely notified of his August PIP and that the PIP was issued after Marley's injury. Pl.'s Opp. 17. That argument is merely a distraction. The record is undisputed that, no later than August 4, 2015 Blackman intended to issue the PIP (Def.'s Reply 10; Blackman Dec. ¶ 13, Ex. B to Def.'s Mot., ECF No. 55-9; Aug. 4, 2015 Performance Review, Ex. 7 to Blackman Dec., ECF No. 55-11), which was well before Marley filed for worker's compensation on either August 10th or 11th. To prevail on a wrongful termination claim where the basis of the wrongful termination is filing a worker's compensation claim, the employee must prove that the termination occurred solely in response to the worker's compensation claim. *Bowman v. Jack Cooper Trans. Co.*, 399 F. Supp. 3d 447, 452 (D. Md. 2019); *see also Goffe v. Johns Hopkins Health Sys's*, No. GLR-15-695, 2015 WL 3489893, at *3–4 (D. Md. June 2, 2015) (dismissing wrongful termination claim where plaintiff's discharge occurred for multiple reasons). On the facts before me, Marley could not possibly prevail.

      2) Retaliation

A plaintiff may prove a Title VII retaliation claim "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework" the Supreme Court established in *McDonnell Douglas Corp, v. Green*, 411 U.S. 792 (1973). *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). An FMLA retaliation claim is assessed under the same framework. *Laing v. Federal Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) ("FMLA retaliation claims are analogous to discrimination claims brought under Title VII. . . Thus, a plaintiff may succeed either by providing direct evidence of discrimination or by satisfying the burden-shifting framework set forth in *McDonnell Douglas*."). It is up to the plaintiff to decide which path to take. *See Foster*, 787 F.3d at 249. Marley's response in opposition to Kaiser's motion for summary judgment suggests he relies on the *McDonnell Douglas* framework. *See* Pl.'s Opp. 12.

Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a *prima facie* case. 411 U.S. at 802. Once a *prima facie* case is established, the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018). The defendant's burden at this point is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the employer are but a pretext for discrimination, thus creating an inference that the employer did act with discriminatory intent. *Strothers*, 895 F.3d at 328. If the plaintiff cannot produce evidence demonstrating the falsity of the employer's proffered reasons, then defendants are entitled to summary judgment as a matter of law. *See Reeves*, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively

revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he "engaged in a protected activity"; (2) his employer "acted adversely" against him; and (3) "the protected activity was causally connected to the adverse action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *see also Strothers*, 895 F.3d at 327 (clarifying that the third element is an "adverse action" rather than an "adverse employment action."). The standard for establishing an adverse action "is more lenient for retaliation claims than for substantive discrimination claims" because the adverse action in a retaliation case does not need to affect an employee's "terms of conditions of employment." *Kelly v. Berryhill*, Civil Action No. RDB-18-0049, 2019 WL 1300816, at *5 (D. Md. Mar. 20, 2019) (quoting *Burlington*, 548 U.S. at 64). Rather, the "plaintiff need only show that the challenged action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington*, 543 U.S. at 68).

In its motion, Kaiser argues that summary judgment must be granted in its favor as to the Title VII retaliation claim for two reasons: first, that Marley fails to establish a *prima facie* case of retaliation under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and second, that Kaiser had legitimate, non-discriminatory reasons for issuing Marley a written warning and PIP. Def.'s Mot. 25–29. As to whether Marley presents a *prima facie* case, Kaiser argues Marley fails to establish the causation element of a retaliation claim. Specifically, Kaiser argues that because Marley complained to human resources about perceived harassment from Richardson *after* Richardson informed him about the written warning and PIP—and the potential for discharge such action carried—the causation element cannot be met. Pl.'s Dep., Ex. A to Def.'s Mot., ECF No.

55-3 at 57–29; Ex. 6 to Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 (email from Marley to HR sent after receiving written warning). Kaiser cites *Univ of Texas Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2520 (2013) to support the proposition that Marley "must establish but-for causation between his protected activity and the adverse employment action" to satisfy this element. Def.'s Mot. 27. Thus, Kaiser's argument boils down to a timing issue on the retaliation claim.

Kaiser also argues that the retaliation claim fails because Kaiser had legitimate, non-discriminatory reasons for taking adverse action against Marley, that being his poor performance. Def.'s Mot. 27. It is beyond dispute that non-pretextual poor performance is a legitimate reason for taking adverse action against an employee, and Kaiser's motion cites ample Fourth Circuit authority to back this up. *E.g. Conckwright v. Westinhouse Elec. Corp.*, 933 F.2d 231, 234–35 (4th Cir. 1991) ("Deciding to lay off someone based on a company-wide performance rating system, which has been in place for years and which has not been shown to be discriminatory, and choosing to lay off . . . the lowest rated, must count as 'an articulation of a legitimate, non-discriminatory reason.'"). Kaiser notes that Marley's coworkers complained to supervisors about Marley's poor performance and states it is undisputed that Marley's performance led to an increased workload for his coworkers. Def.'s Mot. 28; Ex. 2 to Reeder Dec., Ex. E to Def.'s Mot, ECF No. 55-14 at 30 (interview with coworker Tiara Jones wherein she stated she was often called upon the "pick up the slack" for Marley's incomplete or "undone" work).

Kaiser also argues that Marley fails to show pretext on Kaiser's part for the written warning or PIP. Rather, Kaiser argues, Marley's reasons for finding a pretext (that his complaint would pose a problem to Richardson and blemish Richardson's HR record) were purely speculation. Def.'s Mot. 28. As Kaiser states, speculation is insufficient to establish pretext. *Id*. (citing *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 658 (D. Md. 2010) ("Since [employee] offers no evidence

beyond his own unsubstantiated speculations that [employer's] proffered reason for termination was actually a pretext for retaliation, he fails to establish pretext by a preponderance of the evidence.")).

In opposition, Marley argues there is a sufficient factual dispute to deny the motion for summary judgment and allow a jury to decide the Title VII retaliation claim.  Marley argues the facts establish his opposition to discrimination (i.e. confronting Richardson and threatening to report his harassing behavior in early November 2014 (Pl.'s Dec., Ex. 3 to Pl.'s Opp. at ¶ 5, ECF No. 60-3)) occurred early in his time as a benefits specialist, before Kaiser took adverse action against him.  Pl.'s Opp. 13.  In Marley's mind, Richardson antagonized him repeatedly due to "his 'accent' and national origin."  Pl.'s Opp. 13; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 72–76.  In November of 2014, Marley had endured enough and confronted Richardson about his conduct, according to a declaration he attached to his opposition.  Pl.'s Dec., Ex. 3 to Pl.'s Opp. at ¶ 5, ECF No. 60-3.  Marley told Richardson that he planned to file a complaint with the EEOC and Kaiser's upper management.  Pl.'s Opp. 13–14.  Only after this confrontation did Richardson inform Marley that Kaiser intended to implement the PIP.  Pl.'s Opp. 14; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 52; Pl.'s Dec., Ex. 3 to Pl.'s Opp. at ¶ 6.

As to whether Kaiser had a legitimate non-retaliatory reason for issuing a PIP, Marley argues Kaiser lacked documentation of poor performance.  Further, Kaiser's reliance on coworker assessments of Marley's performance is insufficient because, Marley says, courts are to disregard feedback from peers; it is the decisionmaker's assessment that counts.  Pl.'s Opp. 14 (citing *Roy v. Bd. of Cmty. Coll. Trs. of Montgomery Cmty. Coll.*, Civil Action No. CBD-13-2956, 2015 WL 5553716, at *3 (D. Md. Sept. 17, 2015)).  And finally, Marley argues Blackman's concern about Marley's performance in December of 2014 is unavailing because the December 2014 PIP

pertained to Richardson's concerns about Marley's performance. Blackman, who headed Marley's department at the time, did not know what happened to the December 2014 PIP after Richardson issued it; and there is no evidence Blackman attempted to revive that PIP when Marley returned to work in May 2015. Pl.'s Opp. 14–15. Apparently, in Marley's view, this disregard for the PIP undermines Kaiser's legitimate reasons for taking adverse action against Marley.

      In reply, Kaiser reiterates that Marley cannot make out a *prima facie* case of retaliation and rebuts Marley's argument that I cannot consider feedback from peers. Kaiser states that that while courts cannot solely consider co-worker opinions about whether a fellow employee is performing adequately, supervisors *are* permitted to consider coworker complaints in making their own termination decisions, and, Kaiser states, this is exactly what occurred here. Def.'s Reply 5–7 (citing *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (noting supervisor's receipt of complaints from coworkers) and *Dortch v. Cellco P'ship*, 770 Fed. App'x 643, 647 (observing perception of decisionmaker is relevant and discounting coworkers' favorable reviews of employee)). Further, Richardson was independently aware of Marley's performance issues, such as Marley being slow to complete tasks and produced inaccurate work shortly after starting as a benefits specialist. Def.'s Mot. 3; Richardson Dec. ¶ 4, Ex. D to Def.'s Mot, ECF No. 55-13 at 2. The result of this was Richardson assigning Marley's tasks to other employees. Def.'s Mot. 3; Richardson Dec. ¶ 4.

      Kaiser also argues Marley's opposition relies on a sham affidavit. When Marley was deposed, he stated that Richardson put him on a PIP because he had complained to Human Resources about Richardson, which the record shows occurred in December. Def.'s Reply 3; Pl's Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 203. Now, in Kaiser's assessment, Marley bases his retaliation claim on an earlier statement Marley made to Richardson in November that Marley

intended to complain to management and the EEOC about Richardson harassing him. Def.'s Reply 3; Pl.'s Opp. 13–14; Ex. 3 to Pl.'s Opp. at ¶ 5. It is well-established in the Fourth Circuit that parties may not avoid summary judgment by later amending their deposition testimony. *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Elat v. Ngoubene*, 993 F. Supp. 3d 497, 527–28 (D. Md. 2014) (noting that the sham affidavit doctrine must only be applied where there is a flat contradiction of material fact) (citations omitted). As a result of what it views as a sham affidavit, Kaiser argues that Marley fails to make out a *prima facie* case.

In the alternative, Kaiser asserts it had legitimate reasons to take adverse action against Marley (again, poor performance), and states Marley failed to rebut Kaiser's nonretaliatory reasons. Def.'s Reply 4. Importantly, Kaiser argues, Marley does not attempt to rebut Kaiser's legitimate, nonretaliatory reasons for taking adverse action against Marley. It is Marley's obligation to show by a preponderance that Kaiser's legitimate reasons for taking adverse action were illegitimate. *Id*. at 4–5 (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010)).

My charge in deciding this summary judgment motion is to assess whether "the facts and all justifiable inferences arising therefrom in the light most favorable" to Marley fail to demonstrate a genuine dispute of material fact. *Foster*, 787 F.3d, at 248 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)). Whether Marley has set forth a prima facia case is a close call. His complaints about Richardson and filing of an EEOC complaint are undoubtedly activities that must be protected. And so too did Kaiser take adverse action against him by both placing him on the December 2014 PIP and issuing a written warning. Whether there is a causal connection is less clear. As Marley would have it, because he first confronted Richardson in November 2014, before Richardson told Marley that he was destined for a PIP,

15

Marley makes the requisite causal connection. But Kaiser argues this is deceptive. The timing of Richardson *telling* Marley about the PIP is immaterial; what really matters is when Richardson and Kaiser management *decided* to place Marley on the PIP. Further, Marley attempts to move the goal posts on the timing issue for his claim with a declaration that he submitted only after reading Kaiser's motion for summary judgment.

As the Fourth Circuit has explained, "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). To clear the bar, the employee need only show "that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 335–36. Here, Marley claims he notified Richardson of his intent to complain to human resources and the EEOC about Richardson's conduct in November 2014. Pl.'s Opp. 3; Ex. 3 to Pl.'s Opp. at ¶ 5. The record is undisputed that Marley notified human resources about the issue in December. Pl.'s Opp. 3; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 58–61. Marley reported Richardson's conduct to Blackman in December 2014. Pl.'s Opp. 4; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 87. Marley received the first PIP in November or December 2014 and first written warning in December 2014. Pl.'s Opp. 3; Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-3 at 51–52; Ex. F to Def.'s Mot (written warning), ECF No. 55-15 at 2. While Kaiser argues Marley's declaration about confronting Richardson is a sham affidavit that I must disregard, the requirement for making such a finding is that the affidavit flatly contradict the record. *Elat v. Ngoubene*, 993 F. Supp. 2d. 497, 527–28 (D. Md. 2014). I am also forbidden from weighing the evidence on a motion for summary judgment. *See Foster*, 787 F.3d at 248. Marley's declaration, while questionable, does not rise to a flat contradiction; it merely supplements his deposition testimony. As a result, Kaiser

16

cannot establish beyond dispute that the decision to take adverse action against Marley occurred before Marley engaged in protected conduct. Considering all inferences are in favor of non-movant, I must infer that the timing of Marley's protected activity and Kaiser's adverse action occurred in a sequence most favorable to Marley. The "temporal proximity" of these events is enough to establish a causal connection at the *prima facie* stage. *See Strothers*, 895 F.3d at 336–37. Therefore, I find that Marley has established a *prima facie* case.

Making out a *prima facie* case, however, is not the end of the inquiry. Under the *McDonnell Douglas* framework, the defendant may then rebut the *prima facie* case by showing legitimate reasons for the adverse action. *Merritt*, 601 F.3d at 295. Here, Kaiser had a legitimate, nonretaliatory, and well-documented reasons for taking adverse Marley: his poor performance on the job. *E.g.* Richardson Dec. ¶ 4, Ex. D to Def.'s Mot., ECF No. 55-13 at 2; Ex. 2 to Reeder Dec., Ex. E to Def.'s Mot, ECF No. 55-14 at 30. Now, the burden now shifts back to Marley to show that Kaiser's stated reasons for taking an adverse action against him were, in fact, pretextual. *Foster*, 787 F.3d at 250. Marley faces a heavier burden than he did at the *prima facie* stage. To meet this burden, the he must demonstrate "that retaliation was the actual reason for the challenged" adverse action. *Foster*, 787 F.3d at 252. That is to say, he "must establish 'both that the employer's reason was false and that retaliation was the real reason for the challenged conduct.'" *Id.* (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). The employee need not show that the protected activity was the sole cause of the adverse action. His burden, rather, is to show that it was a "but-for" cause. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).

In considering the final step of the *McDonnel Douglas* analysis, Marley's argument collapses whether assessed through a factual or legal lens. Legally, Marley tries to argue that I

17

should disregard Kaiser's attempt to validate through co-worker testimony its decision to take adverse action against Marley. But in so doing, Marley misstates the law: the fact that a peer employee is not a decisionmaker does not undermine that employee's legitimate complaints to a decisionmaker about a coworker. Kaiser is correct that Marley's cases fail to support his argument that I should disregard coworker feedback as to his performance. Rather, in *Roy v. Bd. of Cmty. Coll. Trustees of Montgomery Cmty. Coll.*, Civ. A. No. CBD-13-2956, 2015 WL 5553716, at *4 (D. Md. Sept. 17, 2015), Magistrate Judge Day observed that a peer-employee was not a decisionmaker as to the plaintiff-employee's claim, and therefore the peer's negative testimony about the plaintiff did not support the employer's argument for summary judgment that the plaintiff was not performing satisfactorily. That is not the scenario here: *Roy* fails to undermine the decisionmakers' ability in this case to consider coworker complaints. Similarly, *Mungro v. Giant Food Inc.* is unavailing. In *Mungro*, the court noted that the employee-plaintiff's self-perception of his own performance was not key to the inquiry; it was the decision-maker's perception that mattered. 187 F. Supp. 2d 518, 522 (D. Md. 2002). And that's what Marley is up against here: the decision makers' perceptions that his work product was deficient.

Factually, Marley mounts no argument that Kaiser's termination was pretextual. Examples of Marley's poor performance in the record abound and the opposition hangs its hat on who complained about Marley's performance—but that does not come close to negating Kaiser's legitimate reasons for terminating Marley. Marley's retaliation claim falls short, and Kaiser is entitled to summary judgment, because Marley has failed to produce *any* evidence tending to show the falsity of Kaiser's proffered reasons for terminating him. *Reeves*, 530 U.S. at 148.

Marley's argument that his FMLA claim should not be dismissed does nothing more than bootstrap to his argument regarding Title VII retaliation: Kaiser lacked a legitimate reason for

18

taking adverse action against Marley based on performance, and therefore the FMLA claim must proceed. But I have found that Kaiser did have a legitimate, non-retaliatory reason for taking adverse action against Marley as related to the Title VII claim. The only difference for the FMLA claim is timing. Marley took FMLA leave in December of 2014 as a result of Richardson's harassment and again starting in August of 2015 for his head injury. As to any adverse action resulting from the December 2014 FMLA leave, I find Kaiser is entitled to summary for the same reasons as stated under the Title VII claim. And as to Marley's FMLA leave starting in August of 2015, I find Kaiser had legitimate, non-retaliatory reasons for issuing a PIP and written warning, and ultimately terminating Marley. Again, his poor performance from this time period is well-documented. *E.g.* October 2015 PIP, Ex. 48 to Pl.'s Dep., Ex. A to Def.'s Mot., ECF No. 55-8 at 13. Marley does not even attempt to argue such decisions from Kaiser were pretextual, and I do not see evidence of pretext in the record. Nor can Marley show that his taking FMLA leave was a "but for" cause of the adverse actions Kaiser took. *Foster*, 787 F.3d at 252 ("[T]he *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action."); *Dasilva v. Educ. Affiliates, Inc.*, No. CV CCB-15-541, 2015 WL 9582975, at *5 (granting summary judgment in favor of employer upon finding employee failed to show that her FMLA leave was a but for cause of her termination). Accordingly, because FMLA claims are assessed under the same standard as Title VII claims, *Laing*, 703 F.3d at 717, Kaiser is similarly entitled to summary judgment on the FMLA claim because Marely fails to overcome Kaiser's legitimate, non-retaliatory reasons for taking adverse action against him.

## Conclusion

For the foregoing reasons, Kaiser's motion for summary judgment is GRANTED. A separate order follows.

DATED this 11th day of March, 2021.

BY THE COURT:

/S/

Paul W. Grimm
United States District Judge